**AMOCO PRODUCTION COMPANY, a Delaware corporation, Champlin Petroleum Corporation, a Delaware corporation, and Sun Oil Company (Delaware), a Delaware corporation, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, et al, Defendants–Appellees.**

No. 85–2529.

United States Court of Appeals, Tenth Circuit.

Aug. 2, 1988.

Alan L. Sullivan (Samuel O. Gaufin with him on the briefs) of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for plaintiffs-appellants.

John W. Horsley (Joseph J. Palmer and Royal I. Hansen with him on the brief) of Moyle & Draper, P.C., Salt Lake City, Utah, for defendants-appellees Bow Valley Petroleum Inc., John R. Anderson, and Beverly Lasrich.

Jacques B. Gelin, Atty., Dept. of Justice, Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., and Robert L. Klarquist, Atty., Dept. of Justice; Brent D. Ward, U.S. Atty., D. Utah, and Glen Dawson, Asst. U.S. Atty., with him on the brief), for defendant-appellee U.S.

Before McKAY, SEYMOUR and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

In 1942, the Federal Farm Mortgage Corporation (FFMC) conveyed land in Summit County, Utah, to Hyrum and Florence Newton by special warranty deed. The original deed and all copies of the original no longer exist; however, a version of the deed was recorded in the Summit County Recorder's Office. The content of the original deed is the focal point of this case, because after the 1942 conveyance, both FFMC and the Newtons acted under contrary interpretations of the deed and conveyed overlapping mineral interests in the Summit County property.

FFMC believed it had retained a fifty percent mineral interest in the land, and, in 1957, conveyed that interest to the United States by quitclaim deed. In 1974, the United States leased portions of this mineral interest to the other named defendants.

The Newtons believed they had received all the mineral rights in the land through the 1942 conveyance. In 1960 the Newtons conveyed title in the land to a family corporation, and, in 1971, the family corporation conveyed a mineral lease in the land to Amoco Production Company (Amoco).

Amoco subsequently conveyed portions of its leasehold to the other named plaintiffs.

On January 21, 1976, plaintiffs initiated an action under the Quiet Title Act of 1972, 28 U.S.C. §§ 2409a, 1346(f), 1402(d) (1982 & Supp.IV 1986), to quiet title in the disputed mineral rights. Plaintiffs' principal argument was that the only remaining version of the deed, the one recorded in Summit County, contains no mineral reservation and thus the Newtons had received all the mineral interests in the land. The defendants contended that the original deed contained a reservation clause and that the Summit County Recorder erred in her recording. Defendants also claimed that FFMC's quitclaim deed to the United States in 1957 should have given plaintiffs constructive notice of the dispute and thus barred plaintiffs' suit, since it was not brought within the twelve-year limitations period specified in 28 U.S.C. § 2409a(f) (1982):

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.[1]

Based on section 2409a(f), the defendants moved the district court for summary judgment, and plaintiffs moved for summary judgment on the merits. The district court denied defendants' motion but granted plaintiffs' motion. On appeal, we reversed the district court's entry of summary judgment and, on remand, directed the district court to determine whether erroneously excluded evidence concerning the original deed was otherwise admissible. *Amoco Production Co. v. United States*, 619 F.2d 1383, 1392 (10th Cir.1980) (*Amoco I*).[2] If

---

1. In 1986, section 2409a was amended. 28 U.S. C. § 2409a (Supp.IV 1986). Subsection (f) was redesignated subsection (g), and as new subsection (g) the phrase "except for an action brought by a State" was added after "under this subsection". This amendment does not alter the application of the subsection in the present matter. In this opinion, the limitations section is cited and referred to as section 2409a(f).

2. We also determined that the 1957 quitclaim deed was a stray deed. Because Utah law was ambiguous as to whether a stray deed conveyed constructive notice of an adverse claim to the property interest, we ruled that it would be unreasonable to impute constructive knowledge of an adverse claim to the plaintiffs so as to start the running of the twelve-year period of limitations. We thus held that the plaintiffs'

the evidence was admissible, we directed the district court to determine if the original deed contained a reservation of fifty percent of the mineral rights.

On remand, the district court held further hearings and received additional evidence. On August 7, 1981, the court ruled from the bench that the original deed contained a mineral reservation and that plaintiffs were not bona fide purchasers. Record, vol. 11, at 1–8. Moreover, the court concluded that in light of the additional evidence heard, plaintiffs' action was time-barred under section 2409a(f). *Id.* at 8–10. The government realized the district court's time-bar ruling potentially removed jurisdiction from the court to reach the merits of the quiet title issues. Thus, despite the time-bar ruling, the government sought to verify the court's jurisdiction to resolve the merits by claiming that its Answer contained a counterclaim on the quiet title question.

All of the parties stipulated that the United States' Answer contained a counterclaim, and, on December 17, 1981, the district court decided that the Answer would be treated as a Counterclaim and that "it shall not be necessary for defendant, United States of America, to file a separate counterclaim to assert its claim seeking an order quieting title to an undivided fifty percent mineral interest in the lands which are the subject of plaintiffs' Complaint." Record, vol. 1, doc. 105.

Subsequent to the August 7, 1981 Order, the district court reconsidered its rulings at least two times and ultimately concluded that (1) the original deed contained a reservation of mineral rights, (2) plaintiffs were not good-faith purchasers, and (3) plaintiffs' action was time-barred by section 2409a(f). *See* record, vol. 1, doc. 135. In light of its time-bar holding, the court also ruled that the expiration of the twelve-year period extinguished plaintiffs' claims not only procedurally but also substantively. Record, vol. 1, doc. 135, at 5–7. Thus, the court concluded that the plaintiffs' claims

were "gone forever" and quieted title in the defendants. The district court also concluded that the counterclaim was moot because the time-bar had effectively quieted title in the defendants as requested by the counterclaim. *Id.* at 7. Plaintiffs now appeal all rulings.

## I.

We first consider whether the district court had jurisdiction to resolve the merits of this quiet title suit. Historically, quiet title actions could not be brought against the United States unless the United States waived its sovereign immunity. *See Block v. North Dakota, ex rel. Board of University and School Lands,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). In 1972, Congress created an exception to the United States' sovereign immunity in quiet title actions through the Quiet Title Act of 1972, 28 U.S.C. §§ 2409a(f), 1346(f), 1402(d) (1982 & Supp.IV 1986). However, this exception was subject to a twelve-year limitation.[3]

■ The plaintiffs' action against the United States was initiated on January 21, 1976, and thus would be barred if any of the plaintiffs or their predecessors "knew or should have known" prior to January 22, 1964, that the United States had a claim to the minerals. In *Amoco I,* we determined that plaintiffs' action was not time-barred by section 2409a(f).[4] However, in that case we were reviewing the disposition of motions for summary judgment and, in particular, whether the 1957 quitclaim deed gave constructive notice to the plaintiffs so as to bar their suit. We were never asked to address the question of whether there was sufficient evidence to conclude that the plaintiffs had actual knowledge of the United States' claims. It was not until additional evidence was submitted on remand that the district court had an adequate opportunity to delve into the subjective knowledge of the parties and thereby learn whether

action was not time-barred under section 2409a(f). *Amoco Production Co.,* 619 F.2d at 1387–89.

3. *See supra* text accompanying note 1.

4. *See supra* note 2.

plaintiffs or their predecessors had actual knowledge of the United States' claim to the minerals. In light of the evidence heard on remand, the district court reconsidered whether section 2409a(f) would bar the plaintiffs' suit.[5]

After hearing the evidence, the district court found that, no later than 1957, Hyrum Newton had received at least one letter from FFMC advising him of FFMC's claim of a fifty percent mineral interest. Record, vol. 1, doc. 135, at 3. Based on this finding, the district court ruled that Hyrum Newton had "notice and actual knowledge of the government's interest" prior to January 22, 1964, and that the plaintiffs' action against the United States to quiet title in one-half of the minerals was time-barred. *Id.* at 3–7.

■ Our review of the district court's finding that plaintiffs had actual knowledge of the government's interest prior to 1964 is governed by the "clearly erroneous" standard as set forth in Rule 52(a) of the Federal Rule of Civil Procedure. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). The record reveals that (1) the FFMC employed "fail safe" methods in carrying out its reservation and notice program, and (2) the FFMC conformed to these methods in sending letters to Hyrum

Newton, no later than 1957, advising him of FFMC's mineral interest. In light of these facts and the balance of the evidence, we cannot say that the district court's finding that at least one of the letters gave Newton actual notice of the United States' claim in the minerals no later than 1957 is clearly erroneous.[6]

We also are satisfied that the district court's finding of actual knowledge leads to the conclusion that plaintiffs' action was time-barred under section 2409a(f). However, the district court's conclusions of law that this time-bar extinguished plaintiffs' substantive claims to the mineral property interest and precluded the government's counterclaim are erroneous.

■ Once the district court determined that plaintiffs' suit was time-barred by section 2409a(f), the suit was extinguished procedurally and the district court was precluded from reaching the substantive merits of the plaintiffs' suit. *Block v. North Dakota*, 461 U.S. at 292, 103 S.Ct. at 1822 ("If [plaintiffs'] suit is barred by § 2409a(f), the courts below had no jurisdiction to inquire into the merits.") However, the time-bar does not effect the substantive rights and claims of the parties to title in the property:

---

**5.** Plaintiffs argue that the law-of-the-case doctrine prevents the district court from reconsidering whether the action is time-barred on remand because we previously ruled the action was not barred. Opening Brief of Plaintiffs–Appellants at 19–20. As previously noted, in *Amoco I* we only ruled that the action was not time-barred by constructive notice imputed by the 1957 quitclaim deed. We did not address whether any evidence adequately revealed that any of plaintiffs' predecessors had actual knowledge that the United States claimed an interest in the minerals. Evidence of this kind had not yet been presented to the district court because the case had not passed the motion stages. Moreover, plaintiffs knew that defendants were contesting the actual knowledge of the plaintiffs on remand and that the defendants intended to produce evidence of such knowledge. For example, the pretrial order, drafted and stipulated to by plaintiffs, maintained that actual knowledge by the plaintiffs' predecessors was a contested issue of fact. Record, vol. 1, doc. 62, at 15. The plaintiffs had also filed a motion in limine to preclude evidence of actual knowl-

edge. *See* record, vol. 1, doc. 55. The district court carefully considered this motion and decided to hear the evidence as to actual knowledge. We find no error or prejudice in the district court considering actual knowledge and the possibility that such knowledge, if found, could time-bar plaintiffs' action.

**6.** Plaintiffs present the technical argument that FFMC is not the United States and that notice to Newton of FFMC's interest does not give Newton notice that the United States has a claim in the property as required by 2409a(f). The district court considered this argument and concluded that since the FFMC was a government corporation carrying out legislative policy, its claim did in substance tell plaintiffs that the agency and the United States had an interest in title. Record, vol. 11, at 8–11. We agree with the conclusions of the district court. *See, e.g., Freeling v. Federal Deposit Insurance Corp.*, 221 F.Supp. 955, 956 (W.D.Okla.1962), *aff'd,* 326 F.2d 971 (10th Cir.1963) (control of corporation by Congress leads to conclusion FDIC is a federal agency of the United States).

If a claimant has title to a disputed tract of land, he retains title even if his suit to quiet title is deemed time-barred under § 2409a(f). A dismissal pursuant to § 2409a(f) does not quiet title to the property in the United States. The title dispute remains unresolved. Nothing prevents the claimant from continuing to assert his title, in hope of inducing the United States to file its own quiet title suit, in which the matter would finally be put to rest on the merits.

*Block*, 461 U.S. at 291–92, 103 S.Ct. at 1822; *see United States v. Gammache*, 713 F.2d 588, 591–94 (10th Cir.1983) (a lapse of the twelve-year period of section 2409a(f) does not affect the substantive rights of the party in the property).

The district court's conclusion that the time-bar finding extinguished the United States' counterclaim was also incorrect. The United States' counterclaim is not based on jurisdiction ancillary to that supporting the plaintiffs' barred cause of action. The counterclaim is founded on independent jurisdiction conferred upon the district court by 28 U.S.C. § 1345 (1982) (the district court has original jurisdiction of "all civil actions, suits or proceedings commenced by the United States"). The fact that the United States' action was brought as a counterclaim is immaterial because the independent jurisdiction allows the district court to adjudicate the counterclaim despite the dismissal of the original complaint.[7] *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388–89 (3d Cir. 1973) (where jurisdiction of the counterclaim is independent, "the counterclaim must be allowed to proceed without regard to the fate of the original claim"). The

counterclaim is still valid and the issues it presents must be resolved.

## II.

This case is unique in that the issues presented by the counterclaim are identical to those of the plaintiffs' suit, i.e., whether the original deed contained a reservation provision and whether plaintiffs were bona fide purchasers (BFP). Thus, the district court's ruling on the merits of plaintiff's action, though invalid under the rule in *Block*, have nonetheless in essence addressed the factual and legal issues presented in the counterclaim. Accordingly, rather than remand these issues to the district court, we conserve judicial economy by reviewing the district court's ruling.

We first consider the mineral reservation issue.[8] Plaintiffs claim the district court committed two errors in finding the original deed contained a reservation clause: (1) the district court failed to require clear and convincing evidence to prove the contents of the missing deed, and (2) the district court erred in admitting the BLM folder copy as proof of the contents of the original deed.

Utah law provides that the party bringing a quiet title suit has the burden of proof to establish its interest in title and to persuade the trial court. *Olsen v. Park Daughters Investment Co.*, 29 Utah 2d 421, 511 P.2d 145, 146 (1973). The introduction of a recorded version of a deed purporting to convey title establishes a prima facie claim to have title quieted as directed by the deed. *Music Service Corp. v. Walton*, 20 Utah 2d 16, 432 P.2d 334, 336 (1967); *see Amoco I*, 619 F.2d at 1389. Once the party seeking to quiet title has established a prima facie claim by produc-

---

7. The district court's reference to Federal Rule of Civil Procedure 13(d) and its argument that plaintiffs are somehow enlarging their substantive rights against the United States, record, vol. 1, doc. 135, at 7–8, are not well founded. First, Rule 13(d) concerns counterclaims *against* the United States. The present matter involves a counterclaim *by* the United States. Second, the quiet title issues asserted in the United States counterclaim could have been brought at any time and the United States was not compelled to bring its action as a counterclaim. The plaintiffs were not creating some type of jurisdiction

in order to be heard; the United States was merely exercising its prerogative to bring an action authorized by federal law when it was legally and economically advantageous to do so.

8. As a finding of fact, the court's determination that the original deed contained a reservation clause is subject to the "clearly erroneous" standard of review. *See* Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

ing a recorded version of the deed, the burden shifts to the defendant to prove that he has "better or stronger title than the prima facie title proved." *Music Service Corp.*, 432 P.2d at 336 (quoting *Cottrell v. Pickering*, 32 Utah 62, 88 P. 696, 698 (1907)). In Utah, better or stronger title can be shown over a recorded version of the deed only if the defendant can prove by clear and convincing evidence that the deed is invalid or inaccurate. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1360 (10th Cir.1977) ("Under Utah law ... an acknowledged and recorded deed ... is presumed to be valid and such presumption can only be overcome by clear and convincing proof.").

In the present matter, Amoco produced a recorded version of the deed and thus established its prima facie claim in the property. The burden then shifted to the United States to prove a stronger claim to the property. However, because Amoco had produced a recorded version of the deed, the United States could show a better entitlement only if it could reveal some inaccuracy or invalidity in the deed by clear and convincing evidence. The United States attempted to prove the recorded version of the deed was inaccurate by introducing evidence that the original deed contained a mineral reservation clause. After receiving the United States' evidence, the trial court ruled:

> The court did receive the evidence of content of the 1942 deed and opined from the bench that a preponderance seemed to favor the likelihood of a reservation. However, there is still ambivalence in the court's mind on the issue. Certainly, the weight of the defendant's evidence does not reach the level urged by Amoco. It was argued that proof of the contents of an unavailable document should be such as to leave no doubt as to the substantial parts of the paper. (Citing 2 Jones on Evidence, § 7:7, at page 102 [6th Edition, 1972]). In its previous ruling, this court indicated its bias in this direction, but was advised by the Circuit Court ruling that the recorded version is only prima facie proof. Should it be helpful if there is an appeal, the court felt its finding of

a bare preponderance, as noted, may be helpful.

Memorandum Opinion In Lieu of Findings of Fact and Conclusions of Law at 5–6 (Dec. 31, 1981), Brief of Appellee United States at Appendix B.

The district court erred in applying a preponderance of the evidence standard. Apparently, the court thought that since the recorded version was only prima facie evidence of Amoco's claim, the United States could rebut Amoco's claim with a bare preponderance of evidence. However, because the prima facie evidence in this case is a recorded deed, its strength as evidence and its presumption of validity can be rebutted only by clear and convincing evidence. *Webbe*, 549 F.2d at 1360.

The district court found that the evidence presented by the United States, supporting a reservation clause, met the bare preponderance standard but not the more rigorous clear and convincing standard. Memorandum Opinion at 5 ("[A] preponderance favor[s] the likelihood of a reservation ... [but] [c]ertainly, the weight of the evidence does not reach the level urged by Amoco."). Our review of the record satisfies us that these findings are not clearly erroneous. However, because the district court found that Amoco's recorded version of the deed was not overcome by clear and convincing evidence, we conclude it was error for the court to find that the original deed contained a reservation of mineral interests.

The above discussion regards Amoco as the initial claimant. However, we ruled in Section I of this opinion that Amoco's action was time-barred by section 2409a(f) and that the district court had jurisdiction over the merits of this case only through the United States' counterclaim. Because the quiet title issues arise from the counterclaim, the United States is the plaintiff, Amoco is the defendant, and the burden of going forward shifts to the United States. We do not believe that this shift of the burden changes our result. As claimant, the United States would be obligated to introduce prima facie evidence of its claim at which time Amoco would then present

the recorded version of the deed which would rebut the United States' evidence and be presumed persuasive evidence of Amoco's right to title. As when the United States was the defendant, the United States would be placed in the position of having to show some inaccuracy or invalidity in the deed by clear and convincing evidence in order to defeat the presumptive finality of Amoco's deed. The district court was already presented with this issue and clearly ruled that the United States had not satisfied this standard.

Because we conclude the district court erred in not requiring the United States' evidence to meet a clear and convincing standard in challenging the contents of the recorded version of the deed, it is unnecessary for us to address whether the district court also erred in admitting the BLM folder or in finding that the plaintiffs lacked bona fide purchaser status.

Judgment of the district court is REVERSED, and the district court is directed to enter judgment quieting title to the disputed mineral interest in plaintiffs.