REPUBLIC LIFE INS. CO. v. TOURTELLOTTE, Ex'x.

No. 29339. June 18, 1940.

Rehearing Denied Sept. 10, 1940.

*105 P. 2d 254.*

George F. Short, Welcome D. Pierson, and Max G. Morgan, all of Oklahoma City, and J. D. Carmichael, of Chickasha, for plaintiff in error.

Hatcher & Bond, of Chickasha, for defendant in error.

BAYLESS, C. J. The Republic Life Insurance Company filed an action in the district court of Grady county against Mrs. Beatrice Tourtellotte, executrix of the estate of Edward E. Tourtellotte, deceased, and appeals from a judgment denying it the relief sought.

The company alleged that deceased applied to it in 1935 and received a policy of life insurance. The purpose of the action was to cancel the policy upon two grounds: (1) The policy was void and never became effective because it was not delivered to insured while he was in good health; and (2) the insured willingly, falsely, and fraudulently answered certain questions asked him in the application, such questions and answers touching upon material matters. It is sufficient to say of the defendant's answer and cross-petition that it denied the grounds for cancellation set up in the petition, and sought to enforce payment of the policy.

The parties agree that it is a case of equitable cognizance tried by the district judge without a jury, and both sides recognize it is the duty of this court to review the record, weigh the evidence, and affirm or disaffirm as we view the decision with respect to the clear weight of the evidence.

This agreement of the parties at once renders inapplicable many of the Oklahoma decisions favoring the defendant because the issues in those cases similar to those herein were determined by juries in law actions, and under well-known rules the verdicts of the juries were conclusive on this court because supported by some evidence, although this court may have felt the verdicts were against the clear weight of the evidence. In this case, we are not so restricted; and, if we feel that the judgment of the trial judge is against the clear weight of the evidence, it is not conclusive upon us, but must be reversed.

In the application for insurance the insured represented himself to be in good health. Although there is much evidence in this record to cast doubt upon the good faith and veracity of this representation, there is evidence to justify the trial judge in holding that he was honest in such belief; or at least the evidence, as a whole, is such that we cannot reverse the finding that the policy was delivered while insured was in good health. A distinction is made in Home State Life Ins. Co. v. Jennings, 179 Okla. 39, 64 P. 2d 304, between the representation of "good health" in the application, which is judged largely upon the good faith belief of the insured, and upon the requirement of delivery of the policy during "good health," which is a state of fact to be proved or disapproved if later drawn into controversy. If the determination of the entire case depended upon the correct answer to this issue, we would pay further attention thereto and might even reach a different result; but the view we take of the next issue to be discussed disposes of the case and we pass to it.

The following questions and answers appear in the application, which is attached to and forms a part of the policy:

"Question 11: Name below all causes for which you have consulted a physician in the last ten years. Answer: Accidental Injury 1 1933 Severe Yes

626

Drs. Van Sandt & The Examiners, Wewoka, Oklahoma.

"Question 12: Are you now in good health, as far as you know and believe? Answer: Yes.

"Question 19: Have you now, or have you ever had, any disease or injury not given above, or received pension or health or accident benefit? (If yes, give details, dates, etc.) Answer: No.

"Question 20, Subdivision a: Have you ever had any of the following diseases or symptoms? Apoplexy, Paralysis, Epilepsy, Loss of Consciousness, Dizziness, Delirium Tremens. Answer: No.

"Question 20, subdivision c: Have you ever had any of the following diseases or symptoms? Heart Disease, Angina Pectoris, Dropsy, Cancer, Fistula, Gout, Articular Rheumatism. Answer: No.

"Question 20, Subdivision g: Has any physician in the past five years found your blood pressure above normal? Answer: No."

That in answering the questions referred to above under subdivision 20, said application further provided as follows:

"Answer each group 'Yes' or 'No'. If 'Yes', specify each one and explain under 'Additional remarks.'"

With respect to these, the evidence is uncontradicted that: (1) In 1914, while a student in college, insured had been examined by the college physician and advised he had a defective heart, and was advised against entering military service on that account, although he was passed by the army draft board examiners; (2) that in 1919, while a second lieutenant in the army and stationed at Ft. Sill, Okla., insured had applied in writing for a discharge from the army on account of disease, and he gave details of recent dizziness and blindness, rheumatism, and swollen ankles, and palpitation of the heart while in college; (3) that he was examined by army physicians and found to have:

"Diastolic murmur heard over aortic valve also heard at mitral area (probably flint) systolic murmur heard at apex transmitted to axilla and angle of scapula cardiac hyperhophy apex in 6th space to left of nipple. Mitral regurgitation and aortic regurgitation. Blood pressure 126/47.

"The wound, injury, or disease (is) (is not) likely to result in death or disability.

"In my opinion the wound, injury, or disease (did) (did not) originate but was aggravated by in the line of duty in the military service of the United States." —and was certified to be 75% disabled; (4) that he was recommended to be given a medical discharge because of the heart condition; (5) that he applied for and received a government pension for two or three years; (6) he obtained the policy involved in 1935; and (6) about ten or eleven months later applied to the U. S. Government for disability compensation based on "heart condition and arthritis during February 1918, while in * * * Camp Travis, Texas," and in answer to the questions of names, addresses and nature of illnesses considered by civil physicians during or since service, stated as follows: "Dr. Marvin Harris, Wilburton, Oklahoma; Arthritis, December 1932, March 1933." "Dr. Van Zant, Wewoka, Oklahoma; injuries incurred in auto accident October 1933." "Dr. Tom Flesher, Edmond; Dr. Wm. W. Rucks, Jr., Oklahoma City—Heart and arthritis, recently." He was admitted to the veterans hospital at Muskogee, about May 1, 1936, and died of heart trouble about June 14, 1936.

Therefore, his answers that he had not had dizziness, or heart disease, or rheumatism were not true. His statement that he had never received a pension was not true. His answer with respect to the physicians he had consulted was not complete, to say the least.

Defendant does not make any effort to contradict these facts, except insofar as she attempted to establish that for the last several years of his life his duties, appearance, general health, activities, etc., were such as to indicate he believed he was an insurable risk and in good health, and was so regarded by those who came in contact with him.

It is significant, however, that none of these persons, including his wife, knew he had ever drawn a pension from the government, and were unfamiliar with the heart condition that brought about his discharge from the army.

Both sides agree that in order for the insurer to escape payment on the policy it must show that the answers were untrue, and made willfully false, fraudulent, and misleading, and made in bad faith, N. Y. Life Ins. Co. v. Stagg, 95 Okla. 252, 219 P. 362, and other cases, and the burden of proof in that respect is upon the insurer.

We have said that the answers are shown to be false, and we are of the opinion the company has sustained its burden in this respect. As pointed out above, not only must the answers be false, but they must be willfully so and fraudulent and misleading. We are of the opinion that the nature of the evidence establishing the falsity of the answers is such that no contention can be made with respect to the elements of willfulness and misleading. Insured was a highly educated man, the head of one of the colleges in the state, and there is nothing in the record to indicate that he was induced to make such statements against his will or that he did not understand them. In other words, there is nothing to explain away the inference that such statements were willfully made from the making of them. There can be no doubt they misled the insurer, for by concealing the existence of the maladies and pension, the company was prevented from making such investigation of the matter as it was its right to make, and prevented from exercising any discretion with respect to whether it would withhold issuing the policy on account of those maladies. There is no better settled rule of law than that the misrepresentation of facts or conditions whereby a person is induced to change his position or assume obligations to his detriment, which he otherwise might have declined to do, amounts to fraud.

The tremendous part the heart disease and rheumatism has played in this man's earlier life, and the effect it had had upon activities he had undertaken earlier, preclude any inference that the knowledge or memory thereof had passed away from him and that he gave the negative answers in ignorance or innocence. The questions were not limited to whether he was now suffering from those maladies, nor whether he believed he was now suffering therefrom. The question was whether he had ever had such maladies, was explicit, and a negative answer thereto, under the record before us, has no other explanation than that of willfulness, fraudulent intent, and misleading effect. See Taplin v. Wash. Nat. Ins. Co. (La. App.) 178 S. 514, and many other decisions found under Insurance, Key No. 665 (3), Am. Dig. (West).

The trial judge did not find that he had never had heart trouble, or rheumatism, or that he had never drawn a pension, but found, in substance, that the condition of his health for the last several years was such as to lead him to believe he had never had heart trouble, and that he was in good faith in so saying. In our opinion, this finding cannot be sustained by the evidence, and we think such a finding is clearly against the weight of the evidence.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

OSBORN, HURST, DAVISON, and DANNER, JJ., concur.