The **CITY NATIONAL BANK AND TRUST COMPANY, Guymon, Oklahoma, Trustee of the M.M. Mallard Insurance Trust, Melba Jean Hinchey, and Patricia Ann Cook, Appellees/Counter–Appellants,**

v.

**JACKSON NATIONAL LIFE INSURANCE, Appellant/Counter–Appellee,**

and

**T.S. Hogan, Defendant.**

No. 72189.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 16, 1990.

Rehearing Denied Nov. 13, 1990.

Certiorari Denied Jan. 23, 1991.

David K. Petty, Guymon, for appellant/counter-appellee.

Larry L. Field, Guymon, for appellees/counter-appellants.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellant/counter-appellee Jackson National Life Insurance (Appellant or Insurer) seeks review of judgment entered on jury verdict for Appellees/counter-appellants City National Bank and Trust, Melba Jean Hinchey and Patricia Ann Cook (Appellees or Beneficiaries). Appellees/counter-appellants seek review of the Trial Court's sustention of Insurer's demurrer to Appellee's evidence of bad faith breach of insurance contract, denial of attorney fees and assessment of interest.

Appellees commenced the present action to collect benefits under a life insurance policy issued by Insurer and covering the life of Decedent M.M. Mallard (Decedent or Insured) after Insurer refused Appellees' claim thereunder, allegedly for fraud and misrepresentation by Decedent Insured in the application for insurance. At the close of Appellee's evidence, the Trial Court sustained Insurer's demurrer to Appellee's evidence of bad faith. The jury returned its verdict for Appellees in a sum equal to the face value of the policy, $500,000.00. The Trial Court subsequently denied Appellees' prayer for prevailing party attorneys' fees and assessed interest on the judgment. Insurer appeals the judgment against it under eleven propositions of error. Appellee/beneficiaries counter-appeal the Trial Court's sustention of Insurer's demurrer to the evidence, denial of attorney's fees, and assessment of interest.

In June, 1984, Decedent applied to Union Life Insurance for $500,000 of life insurance through a local estate planner/insurance broker in Guymon, Oklahoma, Defendant T.S. Hogan (Hogan). As part of the application process, Union Life required Decedent to obtain a physical examination.

On or about June 24, 1984, Decedent went to his nephew-physician, Dr. B., for the examination, at which time Dr. B. completed a two-page form detailing Decedent's physical condition, described as good with no prior indication of respiratory problems.

On subsequent investigation and through other medical information gathered by Union Life Insurance during July and August, 1984, it was revealed that Decedent's doctors, as early as 1978 or 1979, had detected a spot on Decedent's lung, indicative of either old or on-going disease process. Upon receipt of the medical information, Union Life requested Decedent to obtain a recent chest x-ray, apparently also indicating some potential respiratory problems. In mid-August, 1984, Decedent was hospitalized by Dr. B. for broncoscopic examination of Decedent's lungs, apparently revealing no material respiratory problems.

On or about September 6, 1984, having received no approval of his application for insurance with Union Life, Decedent, on Hogan's advice, applied to Insurer for life insurance in the principal sum of $500,-000.00. Insurer apparently agreed to process Decedent's application based on the medical information provided to Union Life, and Insurer neither requested nor conducted a physical examination of Decedent. About three weeks later, Insurer issued a policy covering Decedent's life in the requested sum. Hogan delivered the policy to Decedent, requiring Decedent to sign a form stating that his physical condition had not changed since initial application, and that Decedent had not consulted any other physicians in the interim.

In March, 1986, Decedent died as a result of pneumonia and lung cancer. Appellees made claim on Insurer for the proceeds of Decedent's policy. Insurer denied the claim, based on Decedent's apparent failure to report on application for insurance his history of lung problems. Appellees commenced the instant suit. At trial, Insurer's relevant witnesses testified that the policy would not have issued had the "true" state of Decedent's physical condition been revealed. Upon proper instruction, however,

the jury returned its verdict as aforesaid for Appellees.

In its first, second, third and fourth propositions of error, Insurer asserts that its evidence clearly demonstrated material misrepresentations and/or omissions by Decedent in his application for insurance concerning his health, warranting denial of Appellees' recovery on Insurer's policy covering Decedent, that the Trial Court erred in denying Insurer's motions for summary judgment and directed verdict on the issue, that the jury verdict for Appellees is contrary to the evidence, and that Insurer is entitled to judgment as a matter of law. The relevant statute provides:

A. All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent recovery under the policy unless:

1. Fraudulent; or

2. Material either to acceptance of the risk, or to the hazard assumed by the insurer; or

3. The insurer in good faith would either not have issued the policy, or would not have issued the policy in as large amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

36 O.S.1981 § 3609.

Thus, in order for an insurer to escape liability under this section for misrepresentation in the application process, the insurer bears the burden of proof to show not only that the statements were untrue, but also that the statements were willfully false, fraudulent and misleading, that the statements were made in bad faith, and that the applicant's alleged misstatements were relied on by the insurer. *Allied Reserve Life Ins. Co. v. Pierson*, 357 P.2d 205 (Okl.1960); *Republic Life Ins. Co. v. Tourtellotte*, 187 Okl. 624, 105 P.2d 254 (1940);

*Prudential Ins. Co. of America v. Zak*, 185 Okl. 556, 94 P.2d 889, 890 (1939); *United Ben. Life Ins. Co. v. Knapp*, 175 Okl. 25, 51 P.2d 963 (1936). Failure to disclose a latent condition of which the insurance applicant has no knowledge or reason to know does not constitute a defense to an action on the policy. *Mass. Mut. Life Ins. v. Allen*, 416 P.2d 935 (Okl.1965); *Farmer's and Banker's Life Ins. Co. v. Lemon*, 204 Okl. 218, 228 P.2d 634 (1951); *Prudential Ins. Co. of America*, 94 P.2d at 890; *United Ben. Life Ins. Co.*, 51 P.2d at 964. Where the evidence is conflicting as to either insured's state of health at the time of application, or the falsity of insured's statements in the application process, or the intent of the insured, the issues are properly tendered to the jury for resolution. *Brunson v. Mid–Western Life Ins. Co.*, 547 P.2d 970 (Okl.1976); *Atlas Life Ins. Co. v. Eastman*, 320 P.2d 397 (Okl. 1957); *Prudential Ins. Co. of America*, 94 P.2d at 892; *United Ben. Life Ins. Co.*, 51 P.2d at 965. On review, if we find evidence in the record reasonably supporting the jury verdict on such questions, we are bound to affirm. *Atlas Life Ins. Co.*, 320 P.2d at 403.

Under these standards, we have reviewed the evidence adduced. While Insurer introduced evidence showing that Decedent had undergone examinations beginning in the late 1970's for what the attending physicians described as an "abnormal chest," Appellees introduced evidence tending to show that Decedent attributed the "abnormal" findings to scar tissue from a service related injury sustained during World War II. Appellees also adduced evidence showing that Decedent told Hogan, the insurance broker, (1) of the scar tissue on his lungs, (2) of the subsequent examinations during the application process investigating the alleged "abnormalities," and (3) Hogan's advice to Decedent, at the time of signing of the supplemental health certificate and delivery of the policy, that Decedent's subsequent visits to doctors during the application process did not constitute "consultations" which Insurer required to be revealed. See also, *Atlas*

*Life Ins. Co.,* 320 P.2d at 403 (knowledge and acts of agent imputed to insurer). We therefore find the evidence as to Decedent's knowledge of his condition, Decedent's good faith and/or intent to mislead in the application process, and the state of Decedent's health at the relevant times conflicting, warranting denial of Insurer's motions for summary judgment/directed verdict and submission of the issues to the jury. We further find competent evidence in the record reasonably supporting the verdict in favor of Appellees, and we reject Insurer's allegations of error with regard thereto.

■ In its fifth allegation of error, Insurer alleges error of the Trial Court in refusing to permit Insurer to introduce evidence of Decedent's character in rebuttal after Appellees "opened the door" to the issue. In its sixth proposition, Insurer asserts error of the Trial Court in excluding Insurer's evidence going to Decedent's motive and intent in making the alleged misrepresentations in the insurance application. In both propositions, Insurer complains of the Trial Court's refusal to allow Insurer to place in evidence other insurance applications made by Decedent, and in which Decedent answered the medical history questions similarly to his answers on Insurer's application.

While we recognize that evidence as to a person's character and/or truthfulness may be properly introduced where the issue has been raised, we also recognize that the relevance and admission/exclusion of evidence is a matter addressed to the sound discretion of the Court, whose rulings thereon will not be disturbed absent a showing of abuse of discretion. 12 O.S. 1981 §§ 2402, 2403, 2405, 2608; *Whiteley v. OKC Corp.,* 719 F.2d 1051 (10th Cir.1983); *Cooper v. State,* 671 P.2d 1168 (Okl.Cr. 1983); *Samara v. State,* 398 P.2d 89 (Okl. 1964), cert. den. and appeal dismissed, 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681. In the instant case, we find no abuse of discretion by the Trial Court in excluding the questioned evidence (applications for and/or other insurance in effect covering Decedent), as the proferred evidence showed only that Decedent answered similar questions on similar insurance applications in the same way as in the instant case. As we have previously noted, there is some evidence in the record indicating that Decedent did not believe himself to be inflicted with any health problems, but rather attributed "abnormal" findings to a pre-existing and healed war injury, and considered himself to be in good health. Under this view, Insurer's proferred evidence was cumulative at best. We therefore find no abuse of discretion by the Trial Court in excluding Insurer's evidence of other insurance applications.

■ In its seventh proposition, Insurer asserts error of the Trial Court in refusing to permit Insurer's medical expert witness to testify regarding Decedent's history of respiratory/lung problems. However, we find the proferred testimony tends neither to prove nor disprove any issue in the case. See, e.g., *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121 (Okl.1984). Further, we find the proferred testimony arguably cumulative to other evidence introduced during Dr. B.'s deposition. We therefore find no error as alleged by Insurer.

■ In the eighth proposition of error, Insurer alleges error of the Trial Court in denying Insurer's pre-trial motion to dismiss Hogan as a party-defendant, thereby, in essence, preventing removal of the case to federal court, and forcing the foreign Insurer to defend against "local people in a local court to local jurors" to Insurer's prejudice. Hereunder, Insurer asserts that Hogan, as an agent of a disclosed principal, was not a party to the insurance contract, and could have no personal liability for any breach thereof. See, *Hall v. Farmer's Ins. Exchange,* 713 P.2d 1027 (Okl.1986). However, there is also authority for the proposition that agency presents a question of fact for jury determination, and that an insurance agent may be held personally liable where the agent is guilty of negligence, or where, by virtue of some act or omission by the agent or broker, the insurer may avoid liability under the policy. See, i.e., *McFarling v. Demco, Inc.,* 546 P.2d 625 (Okl.

1976) (agency presents question of fact); 43 Am.Jur.2d, *Insurance*, § 141 (individual liability of agent/broker); *Wright v. Hartford Acc. & Indem. Co.*, 258 F.Supp. 841 (WD Okl.1966) (liability to insured of agent/broker). We therefore find no error in failing to dismiss Hogan from the lawsuit.

■ In the ninth proposition, Insurer asserts error of the Trial Court in allowing evidence of reinsurance to be introduced. However, we find Insurer to have failed to preserve the issue for review by inclusion of this allegation of error in Insurer's motion for new trial. 12 O.S. § 991; Rule 17, Rules for the District Courts, 12 O.S.Supp. 1984, Ch. 2, App.

In its tenth proposition, Insurer alleges error of the Trial Court in instructing the jury consistently with the rule established in *Mass. Mut. Life Ins. v. Allen*, 416 P.2d at 941. We go no further than to say that the questioned instruction is in accord with the cited case, and we find no error in the giving of that instruction.

In its eleventh proposition, Insurer asserts error of the Trial Court in denying Insurer's motion for new trial, raising the same issues as are presented in the instant case. Considering our previous holdings herein, we find no abuse of discretion by the Trial Court in denying Insurer's motion for new trial. See, e.g., *Bennett v. Hall*, 431 P.2d 339 (Okl.1967).

In the first proposition of their counter-appeal, Appellees urge error of the Trial Court in sustaining Insurer's demurrer to Appellee's evidence of bad faith breach of the insurance contract, and resulting failure of the Trial Court to submit the issue of punitive damages arising therefrom to the jury. However, we find no error by the Trial Court. As our Supreme Court has said:

> [T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okl.1981).

As elsewhere noted:

> In *Christian [v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1978) ], this Court stated that "The essence of the cause of action [for alleged breach of duty of fair dealing and good faith] is bad faith." Defendant's evidence, if believed, would have supported an arson defense. It cannot be said as it was in *Christian* that it was apparent that defendants never had a valid defense to plaintiff's claim. The fact that plaintiff prevailed [on the contractual insurance claim] does not make defendant's actions bad faith per se. The defendant's actions were reasonable and legitimate. Facts were in dispute as to the cause of the fire. The insurers had a right to have this dispute settled in a judicial forum. A *Christian* cause of action will not lie where there is a legitimate dispute.

*Manis v. Hartford Fire Insurance Co.*, 681 P.2d 760, 762 (Okl.1984).

Thus, and while recognizing the implied duty of good faith and fair dealing encompassed in insurance contracts, Oklahoma law has also recognized that the mere allegation of an insurer's breach of the duties of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination: "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness of the insurer's conduct." *Duckett v. Allstate Insurance Co.*, 606 F.Supp. 728, 731 (WD Okl.1985). Accord, *Manis*, 681 P.2d at 762–763.

■ We therefore hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. If the Trial Court so determines, the legal gate to submission to the jury of the issue of insurer's alleged bad faith conduct is open. However, until the facts, when construed most favorably against the insurer, have established what

might be reasonably perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed. As elsewhere noted with regard to the tort of intentional infliction of emotional distress, "It is for the court to determine whether on the evidence [insurer's tortious conduct] can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement of Laws, Second, Torts 2d, §§ 46(h), (j). "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Manis*, 681 P.2d at 762.

◼ Under this authority and rationale, we find no error by the Trial Court in sustaining Insurer's demurrer to Appellee's evidence of bad faith breach. The evidence adduced revealed Insurer's refusal of Appellee's claim on what Insurer believed to be material misrepresentations of fact by Decedent on the application for insurance, constituting grounds, if believed by the jury, for avoidance of liability. Insurer had a right to litigate this legitimate dispute. The fact that the jury returned a verdict against Insurer does not render Insurer in bad faith. We therefore conclude the Trial Court properly disposed of Appellee's bad faith claim.

In their second proposition, Appellees assert the Trial Court erred (1) in refusing to award Appellees their attorney's fees and (2) in the assessment of interest on the judgment. In support of this allegation, Appellees rely on 36 O.S.Supp.1985 § 3629, which provides:

> B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the

insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at a rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of verdict. This provision shall not apply to uninsured motorist coverage.

Insurer responds, asserting that life insurance contracts are subject to specific statutory provisions, 36 O.S. §§ 4001 et seq., that §§ 4001 et seq. make no provision for prevailing party attorney fees, that § 4030.1 allows only interest "at a rate which is not less than the current rate of interest on death proceeds on deposit with insurer," and that the Trial Court correctly assessed interest and denied Appellees attorney fees. 36 O.S. § 115.

◼ Construing § 3629(B) and § 4030.1 harmoniously, as we must, we find the Trial Court correctly assessed interest, but incorrectly denied Appellees their prayer for attorney fees. While § 4030.1 mandates the interest rate on withheld life insurance proceeds, § 4030.1 is totally silent as to awards of attorney's fees in actions on life insurance contracts. In the presence of such legislative silence on the issue, we deem the Legislature to have intended that attorney fees should be recoverable generally in all actions on insurance policies under § 3629(B), irrespective of the particular type of policy, unless specifically elsewhere proscribed. Because § 4030.1 does not specifically proscribe an award of attorney fees in actions on life insurance policies, we find that § 3629(B) allows such an award of fees, and further find the Trial Court's denial of Appellee's prayer for attorney fees to be, therefore, in error. The case should be remanded for a determination of a reasonable attorney's fee to Appellees under the guidelines for determination of attorney's fees generally as set forth in *State ex rel. Burk v. Oklahoma City*, 598 P.2d 659 (Okl.1979) and *Oliver's Sports Ctr. v. Nat'l. Std. Ins.*, 615 P.2d 291 (Okl.1980).

The judgment entered on jury verdict for Appellees is therefore AFFIRMED, and the cause REMANDED for determination and award of reasonable prevailing party attorney's fee to Appellees.

ADAMS, P.J., concurs.

MacGUIGAN, J., not participating.